UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **LADONNA DELGADO ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2753** |
| **CENTER ON CHILDREN, INC. ET AL.** | **SECTION: "H"(2)** |

### ORDER & REASONS

IT IS ORDERED that the Motion for Summary Judgment (R. Doc. 42) filed by Defendants Mid-Atlantic Church of the Nazarene and Kenneth L. Mills is GRANTED.  Plaintiffs' claims are time barred under federal and state securities law and are DISMISSED WITH PREJUDICE.

### BACKGROUND

This case arises from two promissory notes that Defendant the Center on Children ("the Center") issued.  The first of these notes is a promissory note ("the Pillsbury Note") payable to George and Gloria Pillsbury in the amount of $20,000.00, plus interest at the rate of 8.5 percent, compounded annually, payable forty-eight (48) months from the date of the note.  (R. Doc. 1, Ex. A.)  The Pillsburys assigned this note to Plaintiffs.  (*Id.,* Ex. B.)  The Pillsburys signed the note on

1

April 29, 2004. (*Id.,* Ex. A.) Defendant Donald Allison was president of the Center at the time and accepted the note on behalf of the Center on May 6, 2004. (*Id.*) The balance due on this note has not been fully paid.

The second note at issue in this case is a promissory note payable to Plaintiff LaDonna Delgado in the amount of $25,000.00, plus interest at 8.5 percent, compounded annually, payable forty-eight (48) months from the date of the note. (*Id.*, Ex. C.) Defendant Allison signed the note on behalf of the Center on May 12, 2006, and Delgado signed the note on May 28, 2006. (*Id.*) The balance on this account has not been fully paid.

The Center has since ceased operations, and Plaintiffs contend that Defendants Mid-Atlantic District Church of the Nazarene ("the Church") and Kenneth Mills ("Mills") are responsible for the Center's debts to them. Mills is district superintendent of the Church and sat on the board of directors of the Center. Plaintiffs have demanded payment on the notes from the Church; however, Mills and the Church deny liability for the Center's debts to Plaintiffs.

Plaintiffs originally filed suit in state court. (R. Doc. 1.) Defendants removed the case to this court, asserting federal question jurisdiction under federal securities law as well as diversity jurisdiction. (*Id.,* ¶¶ 15, 18.) Mills, the Church, and the Center are the only remaining Defendants in the case. The Court entered a default against the Center on December 7, 2010. (R. Doc. 11.) Mills and the Church filed the current Motion for Summary Judgment on May 22, 2012 (R. Doc. 42) and filed a Supplemental Motion Memorandum in Support on May 30, 2012 (R. Doc. 48). Plaintiffs

2

filed a Response in Opposition on June 5, 2012 (R. Doc. 54), and Defendants filed a Reply on June 1, 2012 (R. Doc. 52). Plaintiffs filed their Surreply on June 7, 2012. (R. Doc. 58). For the reasons that follow, the Motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). A fact is material "if it might affect the outcome of the suit under the governing substantive law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Once the movant establishes that no genuine issue of material fact exists, the burden shifts to the non-moving party to show that a genuine issue for trial exists. *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995). If the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Courts may grant summary judgment when the evidence is "merely colorable" or is "not significantly probative."

*Anderson,* 447 U.S. at 249-50 (citations omitted).

**LAW & ANALYSIS**

The issue before the Court is whether Plaintiffs' claims are time barred under federal and state securities law. Before answering that question, however, the Court must determine whether the promissory notes at issue in this case are "securities" for purposes of both federal and state securities law. Determining whether the notes are securities is necessary to determine the applicable statutes of limitation. Defendants argue that the notes are securities and are time barred under federal, Maryland, and Louisiana securities law. Plaintiffs argue that the notes are not securities and therefore not governed by the statutes of limitation under securities law. As explained below, the Court finds that the notes are securities and are time barred under the three-year statutes of repose under federal law and Maryland law. The claims are also time barred under Louisiana's two-year prescription period.

    *I.     Whether the Notes are Securities*

The first issue that the Court must consider is whether the notes at issue in this case are securities under federal and state law. Defendants argue that the notes are securities under the four-factor test that the United States Supreme Court articulated in *Reves v. Ernst & Young*. The states relevant to this matter also follow *Reves*. Plaintiffs, however, contend that the notes are not properly classified as securities under *Reves.* As explained below, the Court finds that the notes are securities under *Reves*.

4

A.     Federal Securities Law

"Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called."  *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).  Accordingly, Congress "[e]nacted a broad definition of 'security,' sufficient 'to encompass virtually any instrument that might be sold as an investment.'"  *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004).  Under the Securities Exchange Act, a "security" includes:

> any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or . . . transferable share, investment contract . . . or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include any currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C.A. § 78c(a)(10) (West 2012).

In *Reves*, the United States Supreme Court outlined the appropriate test for determining whether a note is a security.  This test is known as the "family resemblance" test.  *Reves,* 494 U.S. at 65.  In general, this test seeks to distinguish "[n]otes based on whether the notes are issued in an investment context (which are "securities") from notes issued in a commercial or consumer context."  *Lebrun v. Kuswa,* 24 F. Supp. 2d 641, 645 (E.D. La. 1998) (citing *Reves,* 494 U.S. at 63).  Courts considering the issue, however, still must examine the "[c]ontext and economic realities of the transaction."  *Id.*

5

Under *Reves,* every note is presumptively a security; however, this presumption can be rebutted by a showing that the note more closely resembles the "family" of instruments that are not securities. *Reves,* 494 U.S. at 65, 67. This family includes:

> the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business.

*Id.* at 65.

If the note is not sufficiently similar to an instrument on this list, the court must evaluate four factors to determine whether the note is in a class that should be added to the list. *Id.* at 67. The court must consider: (1) "the motivations that would prompt a reasonable buyer and seller to enter into [the transaction];" (2) the "plan of distribution" of the note to determine whether it is a note for which "common trading for speculation or investment" exists; (3) "the reasonable expectations of the investing public;" and (4) the existence of another regulatory scheme which would reduce risks related to the note and make application of securities law unnecessary. *Id.* at 66-67. The Court in *Reves* was not clear as to whether all four factors must be met for a note to qualify as a non-security. *LeBrun,* 24 F. Supp.2d at 646. The Eastern District of Louisiana has adopted a balancing approach to the test; however, it remains unclear how much weight each factor carries. *Id.*

The notes at issue in this case do not resemble any instruments in the "family" of non-

6

securities. Accordingly, the Court considers the four factors of the *Reves* family resemblance test to determine whether the notes are securities under federal law. The Court adopts a balancing approach to the test. Considering these factors, and keeping in mind the presumption that the notes are securities, the Court finds that the notes are securities under federal law.

The first factor for the Court to consider is "[t]he motivations that would prompt a reasonable seller and buyer to enter into [the transaction]". *Reves,* 494 U.S. at 66. A note is likely a security if: (1) "[t]he seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments" and (2) "[t]he buyer is interested primarily in the profit the note is expected to generate . . . ." *Id.* In contrast, the note is less likely to be a security "[i]f the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose . . . . ." *Id.* In a nutshell, the Court must determine whether profit was the motivating factor behind the transaction. *Id.* at 68 n.4.

This factor weighs in favor of finding that the notes are securities. The notes were issued to provide operating capital for the Center, specifically to allow the Center to open new child care centers. (R. Doc. 1-4, p. 6.) Plaintiff Rich Delgado testified that he understood the Center would use the money to operate to benefit children. (R. Doc. 48-11, pp. 8-9.) Additionally, the Pillsbury Note states on its face that it is "[a]n investment of twenty thousand dollars . . . ." (R. Doc. 1-4, p. 6.) The Center's newsletter that solicited investors described the notes as an "investment

7

opportunity." (R. Doc. 48-6.) Plaintiff LaDonna Delgado reviewed these newsletters before deciding to invest. (R. Doc. 48-10, pp. 11-12.) She also remembers reading in one of the newsletters before she decided to invest that the Center reported a $1.4 million profit. (*Id.,* p. 11.) Plaintiffs and the Pillsbury understood before investing that their investment would be used to provide operating capital for the Center.

The Court also finds important the interest rate on the notes. In *Reves,* the Court noted that the purchasers invested "[i]n order to earn a profit in the form of interest." *Reves,* 494 U.S. at 67-68. Specifically, the Court noted that the interest rate paid was slightly above the rate local banks were paying at the time. *Id.* at 68. Based on the seller's motivation of raising capital for its business operations and the purchasers motivation of earning higher interest, the Court found that "[t]he transaction [was] most naturally conceived as an investment in a business enterprise rather than as a purely commercial or consumer transaction." *Id.* Here, the interest rate of 8.5% on the notes was similarly above the Federal Reserves rates at the time the Center issued the notes.[1] Accordingly, the parties to the notes in this case viewed the notes as "an investment in a business enterprise" rather than as "a purely commercial or consumer transaction."

---

[1] Federal Reserve rates in May 2004 were 4.0 percent on a bank prime loan; 1.46 percent on a six-month certificate of deposit; and 3.1 percent on three-year treasury notes. Federal Reserve rates in May 2006 were 7.93 percent on a bank prime loan rate; 5.25 percent on a six-month certificate of deposit; and 4.97 percent on a three-year treasury note. Historical Data, Board of Governors of the Federal Reserve System (July 3, 2012), http://www.federalreserve.gov/releases/h15/data.htm.

The second factor weighs against a finding that the notes are securities. When considering this factor, the Court examines the plan of distribution "[t]o determine whether it is an instrument in which there is 'common trading for speculation or investment.'" *Id.* at 66 (quoting *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 353 (1943). All that is necessary to establish "common trading" is that the notes were "offered and sold to a broad segment of the public." *Id.* at 68. The fact that a note was not broadly distributed, however, is not necessarily fatal to a claim that the note is a security. *Trust Co. of La. v. N.N.P, Inc.,* 104 F.3d 1478, 1489 (5th Cir. 1997). "A debt instrument may be distributed to but one investor, yet still be a security." *Id.*

It is unclear from the record in this case how broadly the notes were offered. Although the record shows that the notes were advertised in the Center's newsletter, as well as to "Friends of the Center On Children," nothing in the record establishes how many people received the correspondence supplied to the Court as evidence of broad distribution. The record establishes only that the notes were advertised to a select few persons, most of whom were relatives of Allison. (*See* R. Doc. 48-10, p. 4.) The Center did, however, market these notes for a period of time spanning at least five years. (R. Doc. 1-4; R. Docs. 48-2, 48-6.) Nevertheless, given the potentially limited number of recipients of the Center's advertising, the established distribution does not qualify as distribution to a "broad segment of the public." As a finding that the notes were not offered to a broad segment of the public does not preclude the Court from finding that the notes were securities, the Court next considers the remaining *Reves* factors. *See Trust Co.,* 104 F.3d at

9

1489.

The third factor weighs in favor of a finding that the notes were securities. This factor is an objective one under which the Court considers the reasonable expectations of the investing public. *LeBrun,* 24 F. Supp. 2d at 648 (citing *Reves,* 494 U.S. at 66-67). "The court will consider instruments to be 'securities' on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that transaction." *Id.* at 66. The Supreme Court has "[c]onsistently identified the fundamental essence of a 'security' to be its character as an 'investment.'" *Id.* at 68-69.

The *Reves* Court specifically noted that the advertisement for the note in that case characterized the notes as investments, and no other facts existed that would have caused a reasonable person to question that characterization. *Id.* That same reasoning applies to the notes in this case. As previously noted, the Center advertised the notes as an investment opportunity. On its face, the Pillsbury note described that instrument as an investment. Plaintiffs have presented no facts to controvert this characterization. Accordingly, the Court finds that the investing public would have considered these notes to be investments and weighs this factor of favor of characterizing the notes as securities.

The fourth *Reves* factor also weighs in favor of a finding that the notes in this case are securities. This factor considers whether another regulatory scheme governs the note, reducing the risks of the instrument. *Reves,* 494 U.S. at 67. "This component of the test is significant

because the foremost threat to the investor is the risk of losing his entire investment." *LeBrun,* 24 F. Supp. 2d at 648-49. As with the other factors, however, this factor is not dispositive. *Id.*

In *Reves,* the Court found it important that the notes at issue were uncollateralized, uninsured, and would entirely escape federal regulation if not characterized as securities. *Id.* at 69. These same characteristics apply to the notes at issue in this case. Although state law relief for breach of the promissory notes or relief through federal bankruptcy law may be available to Plaintiffs, this relief falls short of the comprehensive regulatory schemes that have exempted notes from classification as securities in other cases. *See LeBrun,* 24 F. Supp. 2d at 649.

In conclusion, the Court finds that the notes at issue in this case are securities under federal securities law. As explained above, three of the four *Reeves* factors clearly weigh in favor of characterizing the notes as securities. Under a balancing approach, these three factors outweigh the one factor that weighs in favor of classifying the notes as non-securities.

      B.     *State Securities Law*

Next, the Court determines whether the notes at issue in this case are securities under the applicable state law. Either Louisiana or Maryland law applies to determine this question. The Court finds it unnecessary to determine which state's law applies, however, as the notes qualify as securities under the law of either state.

The Maryland Securities Act includes "any note" within its definition of a "security." Md. Ann. Code §§ 11-101(r)(1) (West 2012); *Caucus Distribs., Inc. v. Md. Sec. Comm.,* 577 A.2d 783, 785

11

(1990). When determining whether a promissory note is a "security" under the Maryland Securities Act, Maryland courts "[c]onsider the interpretation of that same term by federal courts" and, in particular, the *Reves* presumption and analysis as discussed above. *Caucus Distribs.,* 577 A.2d at 788.

Similarly, Louisiana law includes "any note" within its definition of "security." La. Rev. Stat. Ann. § 51:7012(15)(a) (West 2012). Louisiana securities law was modeled after the federal system, and Louisiana courts employ the *Reves* analysis to determine whether a particular note is a security under Louisiana law. *Godair v. Place Vendome Corp. of America,* 648 So. 2d 440, 444 (La. App. 1 Cir. 1994).

As previously discussed, the notes at issue in this case are securities under a *Reves* analysis. As a result, they are also securities under both Louisiana and Maryland law.

*II.     Whether the Notes are Unregistered Securities*

Defendant argues that the notes in the present case are unregistered securities under both state and federal law. Plaintiffs' Response does not address the registration requirements. This inquiry is important to determine whether Plaintiffs' claims are time barred under federal law. The Court finds that the securities are unregistered under federal securities law. A genuine issue of material fact exists as to whether the securities are unregistered under state law. This determination, however, does not affect the applicable time limitations under state law.

"Generally, § 5 of the Securities Act of 1933 'forbids the use of any means of interstate

12

commerce or of the mails to sell or offer to sell securities without having first filed a registration statement with the Securities and Exchange Commission.'" *SEC v. Continental Tobacco*, 463 F.2d 137, 155 (citing *United States v. Custer Channel Wing Corp.*, 376 F.2d 675, 677 (4th Cir. 1967), *cert. denied*, 389 U.S. 850).  This registration requirement, set forth in 15 U.S.C. § 77e, was enacted to "[p]rotect investors by promoting full disclosure of information thought necessary to informed investment decisions."  *In re: Lexington Resources, Inc.*, Release No. 379, 96 S.E.C. Docket 229, 2009 WL 1684743, at *14 (June 5, 2009) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953)). Maryland and Louisiana also impose securities registration requirements.  *See* Md. Ann. Code § 11-501; La. Rev. Stat. Ann. § 51:705; *Ek v. Nationwide Candy Div., Ltd.*, 403 So. 2d 780, 785 (La. App. 3 Cir. 1981), *writ denied*, 407 So. 2d 732 (La. 1981).

Plaintiffs neither argue that the notes were registered as securities nor provide evidence of registration.  A search of the SEC's online database revealed no filings by the Center.  Company Search, U.S. Securities and Exchange Commission (July 3, 2012), http://sec.gov/edgar/searchedgar/companysearch.html.  Accordingly, the Court finds that the notes were unregistered securities under federal law.  The Court is unable, however, to determine whether the notes are unregistered under state law, as neither party provided evidence establishing registration or lack thereof.  In the end, however, this determination is unnecessary, as the applicable statute of limitations under state law is not dependent on whether the securities were registered.

13

### III. Whether Plaintiffs' Claims are Time-Barred

The applicable limitations period under federal securities law and Maryland securities law are nearly identical. Plaintiffs' claims are time barred under both of these laws. Plaintiffs' claims are also time barred under Louisiana securities law.

### A. Statute of Limitations Under Federal Securities Law and Maryland Securities Law

As previously determined, the notes at issue in this case are unregistered securities under federal law. As set forth in section 13 of the 1933 Securities Act, an action based upon the sale of an unregistered security must be filed "[w]ithin one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C.A. §77m; *see also Corwin v. Marney*, *Orton Inv.*, 788 F.2d 1063, 1066 (5th Cir. 1986). In no event, however, may suit be filed more than three years after the sale or public offering of the security. 15 U.S.C.A. §77m; *Corwin,* 788 F.2d at 1066. "This provision creates an absolute bar, and the normal tolling rules are not applicable to toll the three-year period." *Corwin*, 788 F.2d at 1066 (*citing Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir. 1981), *cert. denied*, 458 U.S. 1106 (1982)).

The limitations periods on claims under Maryland's Blue Sky law are nearly identical to those under federal securities law. *Zigel v. Garcia,* 1988 WL 159935, at *4 (D. Md. Aug. 19, 1988) (citing *Morley v. Cohen*, 610 F. Supp. 798, 820 (D. Md.1985)). The Maryland statute provides:

14

> (1) a person may not sue under this section after the earlier to occur of three years after the contract of sale or purchase or . . . [ (2)(ii) ] within one year after the discovery of the untrue statement or omission or . . . after the discovery should have been made by the exercise of reasonable diligence.

Md. Ann. Code § 11-703(f). "Thus, under Maryland law, a plaintiff must assert a claim for securities fraud no later than one year after discovering the fraud, and, in any event, no later than three years after the occurrence of the fraudulent transaction upon which the claim is based." *Zigel,* 1988 WL 159935, at *4; *see also In re Wincopia Farms, LP* 2009 WL 801733, at *8 (Bkrtcy. D. Md. Mar. 25, 2009) (Maryland law requires a plaintiff to bring securities claims within three years of the sale).

The Pillsbury Note was dated May 6, 2004. As noted in the previous paragraph, claims regarding the Pillsbury Note must have been filed no later than three years from that date (the sale of the security), or by May 6, 2007. The Delgado note was dated May 18, 2006, meaning that claims related to that note must have been filed no later than May 18, 2009. As Plaintiffs did not commence this action until June 26, 2010, their federal and potential Maryland claims are time barred.

### B.     *Prescription Under Louisiana Law*

Plaintiffs' claims are also prescribed under Louisiana securities law. Civil claims under Louisiana's Blue Sky law are subject to a two-year prescriptive period. La. Rev. Stat. Ann. § 51:714(c)(1); *Simmons v. Templeton*, 723 So. 2d 1009, 1012 (La. App. 4 Cir. 1998). "No person may

sue under this Section more than two years from the date of the contract for sale or sale, if there is no contract for sale." *Id.* This statute is prescriptive rather than peremptive. *Id.* (citing *Short v. Giffin*, 682 So.2d 249, 257 (La. App. 4 Cir.1996)). "Prescription begins to run the moment the aggrieved party either has knowledge of the violation, or notice of facts, which, in the exercise of due diligence, would have led to the party's actual knowledge of the violation." *Tessier v. Moffatt*, 93 F. Supp. 2d 729, 733 (E.D. La. 1998) (citing *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107 (5th Cir. 1987)). "All that is required is knowledge of the 'facts forming the basis of this cause of action.' The plaintiff need not have knowledge of the cause of action itself." *Id*. (citing *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5th Cir. 1967)); *see also Jensen v. Snellings*, 636 F. Supp. 1305, 1309 (E.D. La. 1986).

Plaintiffs' claims are prescribed under Louisiana law. Upon receipt of the March 25, 2008 letter from Donald Allison reporting the closure of the Center Plaintiffs realized their investment was at risk and wrote to Dr. Mills seeking repayment from the Church in April 2008. Accordingly, Plaintiffs had knowledge at the time they sought repayment of the "facts forming the basis of the cause of action," and the two-year statute of limitations pursuant to Louisiana's Blue Sky Law began to run. Plaintiffs' failure to file suit within two years of receipt of the March 25, 2008, letter means that any Louisiana state law securities claims are prescribed.

**CONCLUSION**

The notes at issue in this case are securities under both federal and state law. Accordingly, the statute of limitations on securities claims governs. Plaintiffs' claims are time barred under federal securities law, Louisiana securities law, and Maryland securities law. Accordingly, Defendants' Motion for Summary Judgment is granted, and Plaintiffs' claims are dismissed with prejudice. Judgment shall be entered in accordance with this order.

New Orleans, Louisiana, on this 13th day of July, 2012.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE